**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| JANET L. HAY, ) | CASE NO. 1:13-CV-02603 |
| ) | |
| Plaintiff, ) | JUDGE GWIN |
| ) | |
| v. ) | MAGISTRATE JUDGE |
| ) | VECCHIARELLI |
| CAROLYN W. COLVIN, ) | |
|     Acting Commissioner ) | |
|     of Social Security, ) | |
| ) | **REPORT AND RECOMMENDATION** |
| Defendant. | |

Plaintiff, Janet Hay ("Plaintiff"), challenges the final decision of Defendant, Carolyn W. Colvin, Acting Commissioner of Social Security ("Commissioner"), denying her application for Period of Disability ("POD") and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423.  This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).  This case is before the undersigned United States Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and Recommendation.  For the reasons set forth below, the Magistrate Judge recommends that the Commissioner's final decision be AFFIRMED.

## I.  PROCEDURAL HISTORY

On October 28, 2010, Plaintiff filed her application for POD and DIB, alleging a disability onset date of January 1, 2010.  (Transcript ("Tr.") 8.)  The application was denied initially and upon reconsideration, and Plaintiff requested a hearing before an administrative law judge ("ALJ").  (*Id.*)  On July 24, 2012, an ALJ held Plaintiff's hearing. (*Id.*)  Plaintiff participated in the hearing, was represented by counsel, and testified.

(*Id.*) A vocational expert ("VE") also participated and testified. (*Id.*) On August 9, 2012, the ALJ found Plaintiff not disabled. (Tr. 5.) On September 24, 2013, the Appeals Council declined to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision. (Tr. 1.) On November 25, 2013, Plaintiff filed her complaint to challenge the Commissioner's final decision. (Doc. No. 1.) The parties have completed briefing in this case. (Doc. Nos. 10, 11.)

Plaintiff asserts the following assignments of error: (1) The ALJ improperly ignored evidence that Plaintiff was limited to sedentary work at best and therefore is disabled under Grid Rule 201.14; and (2) the ALJ erred in evaluating the opinion of Plaintiff's treating physician Dr. Yokiel.

## II. EVIDENCE

### A. Personal and Vocational Evidence

Plaintiff was born in June 1959 and was 50-years-old on the alleged disability onset date. (Tr. 18.) She had at least a high school education and was able to communicate in English. (*Id.*) She had past relevant work as a waitress and bartender. (*Id.*)

### B. Medical Evidence[1]

#### 1. Medical Reports

In late December 2008, Plaintiff slipped and fell on ice in a parking lot. (Tr. 228,

---

[1] The ALJ concluded that Plaintiff had the severe impairment of a psychiatric disorder variously characterized to include major depressive disorder and dysthymia. (Tr. 10.) Plaintiff does not challenge the ALJ's findings with regard to her mental impairments. Accordingly, the Court's summary of the medical evidence will focus on Plaintiff's physical impairments alone.

2

231.) She was diagnosed with a cervical strain and neck pain due to disc degeneration. (Tr. 228, 231.) An MRI of Plaintiff's cervical spine from March 25, 2009, revealed severe left moderate right foraminal stenosis at C6-7. (Tr. 266.)

Progress notes from April 2009 indicate that Plaintiff had a history of narcotic dependence with chronic use of Percocet and tramadol prior to her work-related injury. (Tr. 228.)

In January 2010, Plaintiff presented to South Pointe Hospital for a consultation regarding neck and hip pain as well as bilateral upper extremity pain secondary to her December 2008 injury. (Tr. 259.) On examination, Plaintiff had a reduced range of motion and tenderness. (Tr. 260.) Plaintiff's treatment plan included cervical epidural injections, medication, and a physical therapy evaluation. (*Id.*)

In March 2010, Plaintiff developed inflammation and an infection as a result of a cervical spine epidural block. (Tr. 249, 254.) She presented to the emergency room for treatment on March 30, 2010, and stayed in the hospital for one week. (Tr. 249.) Plaintiff had mild cervical radiculopathy with tenderness, but no weakness. (Tr. 256.) She had normal motor power, tone, and bulk. (Tr. 256.) On April 8, 2010, Plaintiff "was doing much better" and had "no neck pain." (Tr. 249.) She was released from the hospital with prescriptions for pain medications and a recommendation to begin physical therapy. (Tr. 249-250.)

During the relevant period, Plaintiff treated with Jerome B. Yokiel, M.D., at the Center for Comprehensive Pain Care. Examinations revealed tenderness and pain with range of motion, but also showed normal motor and sensory examinations. (Tr. 400-401, 414, 449, 451-454.) Plaintiff was prescribed narcotic pain medication for her

complaints.  (*Id.*)  On November 18, 2010, Dr. Yokiel noted that Plaintiff had not been taking her medications as prescribed.  (Tr. 400.)

On March 12, 2012, Plaintiff attended an independent medical examination with Ralph Kovach, M.D., in connection with her Workers Compensation claim.  (Tr. 460.)  Dr. Kovach reviewed Plaintiff's medical records as well as a recent MRI.  (Tr. 462.)  On examination, Plaintiff had a normal stance, gait, and reflexes.  (Tr. 461.)  She had intact sensation; no atrophy in her arms, shoulders, or hands; no spasms; and no trigger points.  (*Id*.)  She had reduced range of motion in her neck, no back spasms, and good motion in her shoulders despite her reports of significant neck pain.  (Tr. 462.)  Dr. Kovach concluded that Plaintiff could carry up to 20 pounds and should avoid overhead lifting and prolonged standing.  (Tr. 463.)

On May 2, 2012, Dr. Yokiel completed a form wherein he evaluated Plaintiff's physical capacities.  (Tr. 466.)  Dr. Yokiel indicated that Plaintiff could carry ten pounds occasionally and five pounds frequently; sit for four hours in an eight-hour workday; stand for two hours in an eight-hour workday; and walk for two hours in an eight-hour workday.  (*Id.*)  Dr. Yokiel further opined that Plaintiff would have to avoid environmental problems like dust and could not work around hazardous machinery.  (*Id.*)  He concluded that Plaintiff could rarely[2] perform pushing and pulling movements with her arms and legs; climb stairs or ladders and balance; bend or stoop; or reach.  (*Id.*)  Furthermore, Dr. Yokiel noted that Plaintiff could occasionally[3] perform both gross and

---

[2] "Rarely" was defined as 1%-5% of an eight-hour working day.  (Tr. 466.)

[3] "Occasionally" was defined as 6% to 33% of an eight-hour working day.  (Tr. 466.)

fine manipulation and operate a motor vehicle. (*Id.*) He also opined that plaintiff would be absent from work more than four days per month. (*Id.*)

### 2. Agency Reports

On January 25, 2011, Sarah Long, M.D., a state agency physician, reviewed the medical evidence and opined that Plaintiff could perform light work. (Tr. 76-83.) Dr. Long opined that Plaintiff could lift 20 pounds occasionally and 10 pounds frequently; stand, sit, and walk for a total of six hours in an eight-hour workday; frequently climb ramps and stairs; and occasionally perform other postural activities. (Tr. 83.) State agency physician Gerald Klyop, M.D., reviewed the medical evidence and concurred with Dr. Long's opinion. (Tr. 90-101.)

**C.** **Hearing Testimony**

### 1. Plaintiff's Hearing Testimony

Plaintiff fell on ice in a parking lot on December 24, 2008, injuring her neck. (Tr. 36.) She testified that she cannot stand up for very long or perform simple duties at home such as dishes, laundry, and vacuuming. (Tr. 39.) "I'm just . . . uncomfortable no matter what I do. If I sit, I'm sitting for, you know, not very long at all, just very squirmish." (*Id.*) Plaintiff stated that she had pain in her neck, shoulders, and down her right arm to her fingertips. (Tr. 40.) She testified that she had involuntary movement of her right hand; twitching; pain in her lower back; pain radiating into the thoracic spine; and pain radiating in her buttocks. (*Id.*)

Plaintiff testified that she could take care of her personal grooming with some difficulty. (Tr. 48.) She had a driver's license and drove an automobile three or four

times per month.  (*Id.*)  She was capable of doing her own grocery shopping.  (Tr. 62.)  She got about eight hours of sleep per night and did not nap during the day.  (Tr. 49.)  On a typical day, Plaintiff would get up around 8:00 a.m., take her dog outside and sit on the front porch, eat cereal for breakfast, draw for about 30 minutes, and then perform work around the house such as laundry or dusting.  (Tr. 49-50.)

### 2.     Vocational Expert Testimony

Lynn Smith, a vocational expert, testified at Plaintiff's hearing.  The ALJ asked the VE to consider a hypothetical individual of Plaintiff's age, education, and work experience who was able to perform light work as defined in the regulations, but could only occasionally climb ladders, ropes, or scaffolds, and could frequently climb ramps or stairs. (Tr. 69.)  The person could not work in positions that required constant rotation, flexion, or extension of the neck and would be limited to only occasional overhead reaching and handling.  (*Id.*)  The hypothetical individual would have to avoid all use of moving machinery and all exposure to unprotected heights, and would be limited to work that is simple, routine, and repetitive in nature, where there were only occasional changes in the work setting.  (*Id.*)  Furthermore, the individual would have to be able to sit or stand alternatively at will.  (Tr. 71.)  The VE testified that the hypothetical individual would be capable of performing such jobs an office helper, ticket seller, and information clerk.  (*Id.*)

## III.     STANDARD FOR DISABILITY

A claimant is entitled to receive benefits under the Social Security Act when she establishes disability within the meaning of the Act.  20 C.F.R. § 416.905; *Kirk v. Sec'y*

*of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when she cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a). To receive SSI benefits, a recipient must also meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 and 416.1201.

   The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process. 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Second, the claimant must show that she suffers from a "severe impairment" in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) and 416.920(c). A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities." *Abbot*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, the claimant is presumed to be disabled regardless of age, education, or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d). Fourth, if the claimant's impairment does not prevent her from doing her past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment does

7

prevent her from doing her past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g), 404.1560(c), *and* 416.920(g).

### IV. SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2013.

2. The claimant has not engaged in substantial gainful activity since January 1, 2010, the alleged onset date.

3. The claimant has the following severe impairments: cervical strain with degenerative disc disease, pyogenic arthritis, and radiculopathy; thoracic sprain; psychiatric disorder variously characterized to include major depressive disorder and dysthymia.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she must be able to sit or stand alternatively at will. She can occasionally climb ladders, ropes, or scaffolds, and can frequently climb ramps or stairs. The claimant cannot work in positions that require constant rotation, flexion, or extension of the neck. She can occasionally reach and handle overhead. She must avoid all exposure to moving machinery and unprotected heights. She is limited to work that is simple, routine, and repetitive in nature with only occasional changes in the work setting.

6. The claimant is unable to perform any past relevant work.

7. The claimant was born in June 1959 and was 50-years-old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date.

8. The claimant has at least a high school education and is able to communicate in English.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, from January 1, 2010, through the date of this decision.

(Tr. 10-19.)

## V. LAW & ANALYSIS

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. *Id.* However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that

the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

### B. Plaintiff's Assignments of Error

#### 1. The ALJ Improperly Ignored Evidence that Plaintiff was Limited to Sedentary Work at Best and Therefore is Disabled Under Grid Rule 201.14.

Plaintiff argues that the record contains "ample opinion evidence" that Plaintiff was capable of sedentary work at best. (Plaintiff's Brief ("Pl.'s Br.") at 8.) The only opinion evidence to which Plaintiff points in making this argument, however, is Dr. Kovach's opinion that Plaintiff "could not do long periods of standing." (Tr. 463.) According to Plaintiff, this statement by Dr. Kovach is "actually not even at odds" with Dr. Yokiel's opinion, upon which the ALJ did not rely. (Pl.'s Br. at 8.) Plaintiff does not expand upon her first assignment of error any further. As Plaintiff's first assignment of error essentially challenges the ALJ's assessment of Dr. Yokiel's opinion, the Court will address it in its discussion of Plaintiff's second assignment of error.

#### 2. The ALJ Erred in Evaluating the Opinion of Plaintiff's Treating Physician Dr. Yokiel.

Plaintiff maintains that the ALJ erred in assigning less than controlling weight to the opinion of Dr. Yokiel, Plaintiff's treating physician. "An ALJ must give the opinion of

10

a treating source controlling weight if he finds the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in the case record.'" *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(2)) (internal quotes omitted). Conversely, a treating source's opinion may be given little weight if it is unsupported by sufficient clinical findings and is inconsistent with the rest of the evidence. *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993). If an ALJ decides to give a treating source's opinion less than controlling weight, he must give "good reasons" for doing so that are sufficiently specific to make clear to any subsequent reviewers the weight given to the treating physician's opinion and the reasons for that weight. See *Wilson*, 378 F.3d at 544 (quoting S.S.R. 96-2p, 1996 WL 374188, at *5 (S.S.A.)). This "clear elaboration requirement" is "imposed explicitly by the regulations," *Bowie v. Comm'r of Soc. Sec.*, 539 F.3d 395, 400 (6th Cir. 2008), and its purpose is to "let claimants understand the disposition of their cases" and to allow for "meaningful review" of the ALJ's decision, *Wilson*, 378 F.3d at 544 (internal quotation marks omitted). Where an ALJ fails to explain his reasons for assigning a treating physician's opinion less than controlling weight, the error is not harmless and the appropriate remedy is remand. *Id.*

Here, the ALJ gave little weight to Dr. Yokiel's May 2012 Physical Capacities Evaluation (tr. 466), explaining:

> [T]he claimant's physician opined that the claimant was limited to lifting weight consistent with the sedentary exertional level. (11F/2). Dr. Yokiel said that the claimant could sit for four hours, stand for two hours,

11

>> and walk for two hours, in an eight-hour day (11F/2). According to Dr. Yokiel, the claimant had a variety of postural limitations, she could only occasionally manipulate objects, and she would miss more than four days of work per month (11F/2). The undersigned gives little weight to Dr. Yokiel's opinion. While he treated the claimant, his assessment is inconsistent with the objective findings of record. In fact, Dr. Yokiel's own treatment notes do not suggest any such substantial restrictions. Rather, the claimant had a relatively conservative course of treatment, without ongoing physical therapy or surgical intervention, as one would expect of a person with such significant limitations. In addition, the claimant was able to draw on a regular basis, which is inconsistent with a person with such a limited ability to manipulate objects. At hearing, she said that she dropped objects only a few times per month.

(Tr. 17.)

The ALJ did not err in declining to assign controlling weight to Dr. Yokiel's opinion, because he gave "good reasons" for doing so and the following substantial evidence supports that conclusion:

- Plaintiff received conservative treatment of medication management, but did not participate in physical therapy or require surgical intervention. (Tr. 17.) She indicated that conservative measures such as acupuncture were discussed, as well as vocational rehabilitation. (Tr. 44.)

- In activities of daily living, Plaintiff had mild restriction. (Tr. 11.) She testified that she could dust, vacuum, and do laundry as her physical conditions allowed. (*Id.*) She could drive on occasion, shop, and prepare simple meals. (*Id.*) Plaintiff enjoyed drawing. (*Id.*)

- Plaintiff had normal muscle power, tone, and bulk. (Tr. 431-432.) Despite her reports of pain, tenderness, and decreased range of motion in her neck (tr. 249), Plaintiff's physicians restricted her only from heavy lifting. (Tr. 250). She was otherwise allowed to walk and climb stairs. (*Id.*)

12

- Progress notes from Dr. Yokiel at her pain management clinic showed tenderness and pain with range of motion in her neck, but also revealed normal motor and sensory examinations. (Tr. 400-401, 414, 449, 451-454.) Dr. Yokiel did not impose any functional limitations in his progress notes.

- At an independent medical examination with Dr. Kovach in March 2012, Plaintiff had intact sensation; no atrophy in her arms, shoulders, or hands; no muscle spasms; and no significant areas of trigger point tenderness. (Tr. 461-462.) Based on his examination as well as his review of a recent diagnostic test and other medical records, Dr. Kovach opined that Plaintiff could lift no more than 20 pounds, could not perform overhead lifting, and could not stand for extended periods. (Tr. 463.) The ALJ determined that Dr. Kovach's opinion was entitled to great weight, and accommodated Plaintiff's restrictions by limiting her to a reduced range of light work with a sit/stand option. (Tr. 17.)

- Two state agency physicians, Drs. Long and Klyop, reviewed the medical evidence of record and determined that Plaintiff could perform light work. (Tr. 76-83, 90-101.)

Thus, the ALJ considered the record as a whole and concluded that despite her physical limitations, Plaintiff could perform a limited range of unskilled light work that allows for an at will sit/stand option and does not require constant neck motion or overhead lifting. (Tr. 12.)

Moreover, Plaintiff maintains that in rejecting Dr. Yokiel's opinion, the ALJ erred by giving "no consideration to the source's length of the treatment relationship with Ms. Hay, nor the frequency of examination, nor the nature and extent of either relationship, nor supportability of the opinion, nor the specialization of the treating source." (Pl.'s Br. 10.) It is well settled that, where an ALJ "does not accord controlling weight to a treating physician, the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship and

13

the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (citing 20 C.F.R. § 404.1527(d)(2)).  However, there is no requirement that an ALJ engage in an explicit discussion of each factor.  *See Francis v. Comm'r of Soc. Sec. Admin.*, 414 F. App'x 802, 805 (6th Cir. 2011) ("Although the regulations instruct an ALJ to consider these factors, they expressly require only that the ALJ's decision include 'good reasons . . . for the weight . . . give[n] [to the] treating source's opinion' – not an exhaustive factor-by-factor analysis.") (quoting 20 C.F.R. § 404.1527(d)(2)) (alterations in original).  Here, the ALJ specifically acknowledged that Dr. Yokiel treated Plaintiff on more than one occasion but that his opinion was unreliable due to its inconsistency with the objective evidence of record as well as his own treatment notes.  (Tr. 17.)  The ALJ expanded upon this, noting that Plaintiff had a relatively conservative course of treatment without ongoing physical therapy or surgery, and that Plaintiff's ability to draw on a regular basis and her testimony that she dropped objects only a few times per month was especially inconsistent with Dr. Yokiel's opinion.  (*Id.*)  Plaintiff does not explain how the ALJ's decision deprives her of the ability to understand his reasons for rejecting Dr. Yokiel's opinion.  Because the ALJ's reasons "permit[] . . . a clear understanding of the reasons for the weight given" to Dr. Yokiel's opinion, *see Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010), the ALJ's decision satisfies the purposes of the controlling physician rule and, thus, provides no basis for remand in this case.

## VI.  CONCLUSION

For the foregoing reasons, the Magistrate Judge recommends that the Commissioner's final decision be AFFIRMED.

                                                    s/ *Nancy A. Vecchiarelli*
                                                    U.S. Magistrate Judge

Date: September 24, 2014

### OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the District Court's order.  See *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985)*, reh'g denied,* 474 U.S. 1111 (1986).**